**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
Attorneys for Plaintiff, MATTHEW GUNDERSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW GUNDERSON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>  v.<br><br> CARLSON WAGONLIT TRAVEL, INC., a Delaware corporation; FACEBOOK, INC., a Delaware corporation,<br><br>                Defendants. | **CASE NO. 4:18-cv-05803-YGR**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(*Filed Concurrently with Declarations of Matthew Gunderson, Marcus J. Bradley, Esq., and Farrah G Ghaffarirafi; (Proposed) Order*)<br><br>**Date: October 15, 2019**<br>**Time: 2:00 p.m.**<br>**Dept.: 1** |

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

**OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE THAT** on October 15, 2019 at 2:00 p.m. at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Matthew Gunderson, individually and on behalf of those similarly situated will, and hereby does, move this Court for an Order granting final approval of the class action settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities; (3) the Declaration of Marcus J. Bradley; (4) the Declaration of Farrah Ghaffarirafi; (5) the [Proposed] Order; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: October 7, 2019                                    **BRADLEY/GROMBACHER, LLP**

By: /s/ Marcus J. Bradley
     Marcus J. Bradley, Esq.
     Kiley L. Grombacher, Esq.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

4   On July 11, 2019, this Court granted preliminary approval of the Joint Stipulation of

5   Settlement and Release of Claims and approved distribution of the Notice of Class Action

6   Settlement ("Notice of Settlement") to all Class Members.  (ECF Dkt. No. 45.)  Class Members

7   were given 60 days to opt out or object to the Settlement ("Response Deadline").  Now that the

8   Response Deadline has passed, Plaintiff is pleased to report that: **(1) 2 Class Members opted out

9   of the settlement; (2) 0 Class Members objected to the Settlement; (3) the entire Net

10  Distribution Fund will be disbursed to 21 members of the Class; and (4) the average

11  payment to members of the Monetary Payment Class is approximately $4,309.52, and the

12  highest is approximately $30,669.60.** (Declaration of Farrah Ghaffarirafi ["Ghaffarirafi Decl."],

    ¶9.)

13

14  The proposed One Hundred and Fifty Thousand Dollar ($150,000.00) non-reversionary

15  class action settlement of will provide substantial monetary payments to twenty-one (21)

16  employees/class members with an average gross settlement award to class members in an amount

17  in excess of $4,000. As set forth more fully below, the proposed settlement satisfies all the criteria

    for settlement approval under Federal Rule of Civil Procedure 23.

18

19  Plaintiff now seeks final approval of this non-reversionary Settlement.  The basic terms

    of the Settlement provide for the following:

20

21  (1)     A completely non-reversionary Total Settlement Amount of $150,000.  The Total

            Settlement Amount includes:

22

23  (a)     Attorneys' fees not to exceed $37,500.00.

24  (b)     Class Counsel Costs Award not to exceed $10,000.

25  (c)     Settlement Administration Costs of $3,500, to be paid to the jointly

            selected settlement administrator, ILYM Group, Inc. ("ILYM").

26

27  (d)     A $6,000 payment to the California Labor & Workforce Development

            Agency ("LWDA") for the LWDA's portion of the $8,000 PAGA Award

28

pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

(e)    Plaintiff's Class Representative Service Award of $2,500 for his service on behalf of the Class and for agreeing to a broader release than those required of other Class Members.

(f)    A Net Settlement Value estimated to be $90,500.00.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and adequate in light of the risks of continued litigation. As discussed below, while Plaintiff was confident that the claims were certifiable and had merit, there were significant risks that the Court could deny certification and that Defendant could prevail on the merits. Accordingly, the Settlement was negotiated by the Parties at "arm's length" with helpful guidance from Tripper Ortman, an experienced and well-respected class action mediator. As noted above, the Settlement confers substantial monetary benefits to Class Members. Indeed, Class Counsel believes that the average net recovery is exponentially higher than many of the other wage and hour class action settlements approved by California state and federal courts.

The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). Indeed, by settling now rather than proceeding to trial, the Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at or before trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members as evidenced by no objections, Plaintiff respectfully requests that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## II.    THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESS WERE COMPLETED PURSUANT TO THE COURT'S ORDER

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged ILYM to provide settlement administration services.  ILYM's duties performed to date include, but are not limited to: (a) printing and mailing the Notice of Settlement (hereinafter "Notice Packet") to the Class; (b) performing address updates and verifications as necessary prior to the mailing of the Notice Packet; (c) conducting address traces on those Notice Packets that were returned to ILYM as undeliverable; and (d) receiving and processing and requests for exclusion from and objections to the Settlement.  Duties that ILYM will be performed if and after the Court enters a Final Approval Order will include: (a) calculating the Individual Settlement Payments; (b) processing and mailing Individual Settlement Payment checks; (c) handling tax withholdings as required by the Settlement and the law; (d) preparing, issuing and filing tax reporting and other applicable tax forms; (e) handling the distribution of any unclaimed funds pursuant to the terms of the Settlement; and (f) other tasks as the Parties mutually agree to and/or the Court orders ILYM to perform.

On August 1, 2019, ILYM received data files from the Defendant containing each Settlement Class Member's name, most recent known mailing address and telephone number, Social Security Number, dates of employment and gross wages. The mailing list contained 23 individuals.

On August 12, 2019, ILYM mailed Notice Packets to Class Members via First Class U.S. Mail.  Class Members were given until September 26, 2019, to opt out or object to the Settlement. Plaintiff is pleased to report that only 2 individuals opted out of the Settlement and no individuals objected to the Settlement.

## III.    ARGUMENT

### a.    The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e).  The process for court approval of a class action settlement is comprised

of three principal stages:

Preliminary Approval:  The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness.  If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice of the settlement disseminated to the class.  *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

Class Notice:  Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out.  *See id.*, § 21.633.

Final Approval:  A formal fairness or final approval hearing is held by the Court, at which class members can be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.[1]  Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment.  *See id.*, § 21.634.

The first two steps have been completed.  The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval.  (*See* Order Granting Preliminary Approval of Class Settlement, ECF Dkt. No. 51.)  In addition, the Settlement Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court.  (*See generally* Ghaffarirafi Decl.)  Plaintiff now asks the Court to grant final approval of the proposed Settlement.

---

[1] A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2).  In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation . . . .").

-4-

The decision about whether to approve the proposed Settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon*, 150 F.3d at 1026-27. The Ninth Circuit has set forth a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, including: (1) the strength of Plaintiffs' case, and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement. *Id.* at 963 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

These factors, which are discussed below, confirm that the proposed Settlement is more than fair, reasonable, and adequate for Class Members. The Settlement provides considerable value; Class Members need not bear the risk and delay associated with trial proceedings to obtain these benefits; and the Settlement has been met with substantial support and minimal opposition from Class Members.

**b. The Settlement Was Achieved After Evaluating the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation**

In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Rodriguez*, 563 F.3d at 965.

Throughout this litigation, Defendant has indicated that it intended to vigorously contest class certification and Plaintiff's claims on the merits. While Plaintiff does not agree with Defendant's arguments regarding class certification or their defenses on the merits to Plaintiff's

1    claims, Plaintiff recognizes that there is a risk that the Court and/or a jury will agree with

2    Defendant, and thus, limit or eliminate Class Members' ability to recover on the claims at issue.

3         Furthermore, while Defendant has agreed to request certification for settlement purposes only,

4    if the Settlement is not approved, Defendant has indicated that it intends to vigorously contest

5    certification, which creates further risk for Class Members.  See, e.g., *Ogiamien v. Nordstrom, Inc.*,

6    2015 U.S. Dist. LEXIS 22128, at *15; 165 Lab. Cas. (CCH) P36, 317 (C.D. Cal. February 24, 2015)

7    (denying certification of bag check case); *Quinlan v. Macy's Corp. Servs., Inc.,* 2013 U.S. Dist. LEXIS

8    164724 (C.D. Cal. 2013) (same); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014)

9    (granting motion for decertification of closing time claim); *Holak*, 2014 U.S. Dist. LEXIS 139879, at

10   *21-22 (denying certification of direct wage statement claim); *Ridgeway*, 2014 U.S. Dist. LEXIS

11   126806, at *28-29 (granting summary judgment and denying certification of direct wage statement

12   claim).

13        Although Plaintiff believes he had valid counter-arguments to the defenses, and was

14   cautiously optimistic about his chances of prevailing at trial, this optimism was tempered by the

15   recognition that the odds of a favorable verdict being reversed on appeal are not too remote to

16   ignore.  *W. Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is

17   known from past experience that no matter how confident one may be of the outcome of litigation,

18   such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v.*

19   *Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial);

20   *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), modified, 449 F.2d 51

21   (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of

22   appeals).

23        Additionally, early resolutions save time and money that would otherwise go to litigation.

24   Parties' resources, as well as the Court's, would be further taxed by continued litigation.  And if

25   this action had settled following additional litigation, the settlement amount would likely have

26   taken into account the additional costs incurred, such that there may have been less available for

27   Class Members.  Cost savings is one reason why California policy strongly favors early

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
*Matthew Gunderson v. Carlson Wagonlit Travel, Inc.; Case No. 4-18-cv-05803*

settlement. *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum."). This concern also supports settlement.

In summary, although Plaintiff and his counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through trial. Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### c. The Settlement Was Reached through Arm's-Length Bargaining in which All Parties were Represented by Experienced Counsel

The Parties participated in a full-day mediation session with Tripper Ortman, a well-respected mediator of wage and hour class actions. Mr. Ortman helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff was represented by Bradley/Grombacher LLP, a firm that regularly litigates wage and hour claims through certification and on the merits, and has considerable experience settling wage and hour class actions. (*See generally* Bradley Decl.) Defendant was represented by Littler Mendelson, P.C., which operates a respected class action defense practice.

As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL

-7-

4010049, at *14 (internal citation omitted).

**d.    Class Counsel Conducted A Thorough Investigation of the Factual and Legal Issues**

Furthermore, the Settlement is the product of informed negotiations following extensive investigation by Plaintiff's Counsel.  During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law.  The investigation entailed the exchange of information pursuant to formal and informal discovery methods, including interrogatories and requests for admission, and dozens of depositions.  In the course of written discovery, Class Counsel received and analyzed documents, *inter alia*, the following information and evidence with which to properly investigate and evaluate the claims, including: (1) Defendant's written policies regarding, e.g., meal and rest period policies, time-keeping, final pay, overtime; (2) wage statements; and (3) time and payroll records.

Overall, Class Counsel performed an exhaustive investigation into the claims at issue, which included: (1) determining Plaintiff's suitability as putative class representative through interviews, background investigation, and analysis of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendant's labor policies and practices; (5) researching settlements in similar cases; (6) conducting a discounted valuation analysis of claims; (7) drafting the mediation brief; (8) participating in a full-day mediation session; and (9) finalizing the Settlement Agreement.  The extensive document and data exchanges have allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged against the benefits of the proposed Settlement.

**e.    The Class Has Responded Positively to the Settlement**

The Settlement Class' response demonstrates its support for this Settlement—2 Class Members opted out and 0 Class Members filed documents drafted as objections to the Settlement. (Ghaffarirafi Decl. ¶¶ 6-7.)  Participating Class Members will share the entire Net Distribution

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
*Matthew Gunderson v. Carlson Wagonlit Travel, Inc.; Case No. 4-18-cv-05803*

1  Fund and will receive an average payment of $4,309.52, with the highest being $30,669.60. (*Id.*

2  at ¶ 9.) A low number of opt-outs and objections is a strong indicator that a settlement is fair and

3  reasonable. *See, e.g.*, *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)

4  (affirming settlement approval where 45 of approximately 90,000 notified class members

5  objected and 500 opted out); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.

6  App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national

7  class members elected to opt out [(1.5% of the entire Class)] and . . . [a] total of nine members . . .

8  objected to the settlement). The Class Members' response—both in the extremely low rate of

9  opt-outs and objectors—compares favorably to those cases and warrants final approval.

10      Likewise, the average Class Member recovery of $4,309.52 compares very favorably to

11  other wage and hour class action settlements for similar claims on behalf of non-exempt

12  employees. *See*, *e.g.*, *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento

13  County Super. Ct.) (average net recovery of approximately $80); *Fukuchi v. Pizza Hut*, Case No.

14  BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v.*

15  *United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery

16  of approximately $120); *Ressler v. Federated Dep't Stores, Inc.*, Case No. BC335018 (L.A.

17  County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*,

18  Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

19  approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D.

20  Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No.

21  04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v.*

22  *Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of

23  approximately $20).

24          **f.**    **The Proposed PAGA Settlement Is Reasonable**

25      Pursuant to the Settlement Agreement, $8,000 from the Total Settlement Amount shall be

26  allocated to the resolution of the PAGA claim, of which 75% ($6,000) will be paid directly to the

27  LWDA, and the remaining 25% will be added to the Net Distribution Fund. This result was

28

reached after good-faith negotiation between the Parties. Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see also Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

The PAGA component of the Settlement is the product of arm's-length negotiations between counsel well versed in the intricacies of PAGA litigation and, more importantly, wage and hour employment law. Class Counsel conducted extensive formal and informal investigation and discovery into the claims at issue and have assessed both the strengths and weaknesses of the claims and the risks of continued litigation. Based on the preceding, Class Counsel strongly believe that the PAGA component of the Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation.

## IV.    CONCLUSION

The Parties have negotiated a fair, reasonable, and adequate settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

DATED: October 7, 2019              **BRADLEY/GROMBACHER LLP**


                                     */s/ Marcus J. Bradley*
                                    Marcus J. Bradley, Esq.
                                    Kiley Lynn Grombacher, Esq.
                                    Attorneys for Plaintiff,
                                    Matthew Gunderson